LI

**FILED**

MAY 1 3 2008

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE JOHN W. DARRAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 07 CR 844 |
| | ) | |
| v. | ) | |
| | ) | Title 18, United States Code, |
| GARY AUMANN, | ) | Sections 1341 and 2 |
| DONALD DOWN, | ) | MAGISTRATE JUDGE SCHENKIER |
| THOMAS ALESSI, | ) | |
| ROBERT ROGERS, and | ) | **SUPERSEDING INDICTMENT** |
| ROBIN ROGERS VARGO | ) | |

## COUNT ONE

The SPECIAL FEBRUARY 2008-1 charges:

1.    At times material to this indictment:

    a.    American Airlines, also known as AMR Corporation, conducted substantial operations at O'Hare International Airport in Chicago, Illinois.

    b.    Gary Aumann was employed by American Airlines as the Planner of Facility Maintenance ("PFM"). As the PFM, Aumann supervised and managed administrative functions in the Facilities Maintenance division, such as (i) sourcing supplies, parts, and vendor services, (ii) repair of American's terminals, hangar areas, cargo facilities and ramp/parking areas, (iii) reviewing invoices and approving invoices for processing in accordance with corporate guidelines, and (iv) maintaining oversight of vendor performance for activities related to maintenance. Aumann also developed the annual facilities maintenance budget, tracked its performance on a monthly basis, and provided senior management with reports documenting performance and variances from the budget.

c.    In his capacity as the PFM for American Airlines at O'Hare, Aumann had authority to approve purchase orders of less than $10,000. Payments for goods or services over $10,000 could not be authorized by Aumann in the absence of supervisory approval unless the bill for such products or services was supported by a vendor contract.

d.    Defendant ROBIN ROGERS VARGO maintained accounts at Harris Bank held in the name of Crown Supply and Feeder Industries, and an account at LaSalle Bank in the name of Advanced Maintenance Products (AMP). The address of record for AMP was a post office box in Streamwood, Illinois. The addresses of record for Crown Supply and Feeder Industries were located at commercial mail receiving agencies.

2.    Beginning in approximately 1997, and continuing to approximately December 13, 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT ROGERS, and
ROBIN ROGERS VARGO,

defendants herein, along with Gary Aumann, devised and participated in a scheme to defraud American Airlines, and to obtain money and funds by means of materially false and fraudulent pretenses, representations, and promises.

3.    It was part of the scheme that Gary Aumann directed defendant ROBERT ROGERS to submit to American Airlines invoices requesting payment for goods and services that had never been provided to American Airlines (the "bogus

invoices") so that Aumann, in his position as the PFM for American Airlines at O'Hare, could cause American Airlines to pay the bogus invoices.

    4.    It was further part of the scheme that defendants ROBERT ROGERS and ROBIN ROGERS VARGO agreed to transmit bogus invoices purportedly issued by Feeder Industries, Crown Supply, and AMP to American Airlines well-knowing that Aumann would cause American Airlines to pay the bogus invoices.

    5.    It was further part of the scheme that defendants ROBERT ROGERS and ROBIN ROGERS VARGO, and Gary Aumann, agreed to share the proceeds derived from checks issued by American Airlines to pay the bogus Feeder Industries, Crown Supply, and AMP invoices.

    6.    It was further part of the scheme that Aumann, in his capacity as the PFM at O'Hare, knowingly approved payment for bogus invoices transmitted by defendants ROBERT ROGERS and ROBIN ROGERS VARGO to American Airlines.

    7.    It was further part of the scheme that Aumann knowingly and falsely represented to American Airlines that bogus invoices in amounts exceeding $10,000 transmitted by the co-defendants were supported by a contract with American Airlines, when in truth and fact, as Aumann well-knew, such invoices were not supported by contract.

    8.    It was further part of the scheme that by causing the bogus invoices to be submitted and approved for payment by American Airlines, defendants ROBERT ROGERS and ROBIN ROGERS VARGO, and Gary Aumann, fraudulently caused

American Airlines to transmit payment for the bogus invoices through the U.S. mail to the mailing addresses of the purported vendors of such goods and services.

9.     It was further part of the scheme that between approximately 1997 and December 2005, defendants ROBERT ROGERS and ROBIN ROGERS VARGO, and Gary Aumann, fraudulently caused American Airlines to issue checks payable to AMP, Crown Supply, and Feeder Industries in amounts totaling approximately $1,218,337.

10.     It was further part of the scheme that defendants ROBERT ROGERS and ROBIN ROGERS VARGO caused checks issued by American Airlines in satisfaction of the bogus invoices to be negotiated through the bank accounts associated with AMP, Crown Supply, and Feeder Industries, and shared the proceeds of the checks with Aumann.

11.     It was further part of the scheme that defendants ROBERT ROGERS, ROBIN ROGERS VARGO, and Gary Aumann, concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

12.     As a result of the scheme to defraud, defendants ROBERT ROGERS and ROBIN ROGERS VARGO, and Gary Aumann caused American Airlines to suffer losses totaling approximately $1,218,337.

13.     On or about December 27, 2005, at Palantine, in the Northern District of Illinois, and elsewhere,

ROBERT ROGERS, and
ROBIN ROGERS VARGO,

defendants herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to Feeder Industries Ltd, PMB 107, Suite 700, 800 East Northwest Highway, Palantine, Illinois, 60067, which envelope contained a check payable to Feeder Industries in the amount of $ 3,378.80;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWO

The SPECIAL FEBRUARY 2008-1 further charges:

1.    The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 - 12 of Count One of this indictment.

2.    On or about May 12, 2004, at Palantine, in the Northern District of Illinois, and elsewhere,

ROBERT ROGERS, and
ROBIN ROGERS VARGO,

defendants herein, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be delivered by U.S. mail according to the directions thereon, an envelope from American Airlines, Tulsa, Oklahoma, addressed to Feeder Industries Ltd, PMB 107, Suite 700, 800 East Northwest Highway, Palantine, Illinois, 60067, which envelope contained a check payable to Feeder Industries in the amount of $1,260.47;

In violation of Title 18, United States Code, Sections 1341 and 2.

-6-

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2008-1 further charges:

1.      The allegations contained in Counts One and Two of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of their violations of Title 18, United States Code, Section 1341, as alleged in the foregoing Indictment,

ROBERT ROGERS, and
ROBIN ROGERS VARGO,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense(s).

3.      The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to $1,218,337.

4.      If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants

      (a)      Cannot be located upon the exercise of due diligence;

      (b)      Has been transferred or sold to, or deposited with, a third party;

      (c)      Has been placed beyond the jurisdiction of the Court;

(d)    Has been substantially diminished in value; or

(e)    Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

_____
UNITED STATES ATTORNEY

A TRUE BILL:


_____
FOREPERSON